HARVARD BREWING COMPANY *vs.* LAWRENCE J. KILLIAN.
LAWRENCE J. KILLIAN *vs.* HARVARD BREWING COMPANY & trustees.

Suffolk.     March 26, 1915. — September 16, 1915.

Present: RUGG, C. J., LORING, BRALEY, & PIERCE, JJ.

*Practice, Civil,* Auditor's report. *Contract,* In writing. *Evidence,* Extrinsic affecting writings. *Custom,* Usage of trade. *Barrel. Words,* "Barrel."

Where an auditor admits evidence of a trade usage to explain the meaning of a word in a contract in writing "for the purpose of showing what the real contract was between the parties," and an exception is taken before the auditor to the admission of the evidence but no motion is made to recommit the auditor's report and it is admitted in evidence, and the auditor's report contains a finding founded on the evidence thus admitted by him, *it seems,* that this finding made by the auditor is a fact in the case.

In an action on a contract in writing, by which the plaintiff agreed to furnish the defendant beer, ale and porter "at the regular price charged to the Boston retail trade," it is competent for the plaintiff to prove that as a matter of fact the beer, ale and porter sold to the Boston retail trade was sold at a price per barrel, in a barrel that originally held thirty-one gallons and held less and less as it continued in use and its hoops were tightened, and that the price of the beer, ale and porter charged to the Boston retail trade was based on a barrel of that kind and not on a barrel containing thirty-one and one half gallons as specified in R. L. c. 62, § 2.

LORING, J. By a written contract between Killian and the Harvard Brewing Company the company agreed during the time

specified in the contract "to furnish the said Lawrence J. Killian good and merchantable beer, ale and porter, at the regular price charged to the Boston retail trade, with the understanding that when any change is made in prices to the retail trade in the city of Boston, the price to said Lawrence J. Killian shall be made accordingly."

This contract was made on August 16, 1907. Thereafter lager beer, ale and porter were furnished by the company to Killian in barrels, half barrels, quarter barrels and hogsheads, and charged at prices which then were charged to the Boston retail trade for like barrels, half and quarter barrels and hogsheads.

The defence set up by Killian was that by the written contract between them the company agreed to sell him beer, ale and porter by the barrel and that meant by the barrel defined in R. L. c. 62, § 2, to wit, thirty-one and a half gallons; and he proved (indeed it was admitted by the company) that the barrels, half barrels, quarter barrels and hogsheads of beer, ale and porter delivered to him did not contain thirty-one and a half gallons per barrel. The company contended that the "barrel" specified in the written contract was the barrel in use in the Boston retail trade, and was allowed to put in evidence of the fact that that barrel, as constructed originally, held thirty-one gallons only and that as it continued in use it held less and less. The reason for the barrel holding less and less as it continued in use was that to keep the barrels tight the hoops had to be driven toward the largest part of the barrel, and in this way the size of the barrel and the contents of it when full were reduced.

At the trial the company among other things introduced the report of the auditor. The auditor in his report found "that by the word 'barrel,' as used in said application and contract, the parties intended a barrel with varying capacity as above stated as used in the ordinary course of trade in dealing from brewer to retail dealer, and I find that the company used such barrel." The auditor's report contained this statement also: "Killian objected to the allowance of any evidence of Killian's knowledge of the quantity contained in the barrels delivered to him by the company and of the varying capacities of the barrels so delivered due to handling and driving the same as aforesaid, and further objected to the introduction of any evidence tending to show that

there was a universal custom in the trade to the effect that the word 'barrel' as used in the trade meant a barrel of original capacity of thirty-one gallons, which capacity was likely to vary in the manner and for the reasons above stated. The only ground of this objection was that it tended to contravene the Massachusetts statute as to the contents of a standard barrel. I overruled this objection and admitted the evidence, the evidence as to custom being admitted not for the purpose of proving a custom but for the purpose only of showing what the parties had in mind at the time of the application dated August 5, 1907, and at the time of the execution of the contract dated August 16, 1907, the defendant having admitted upon cross-examination without objection by counsel for the defendant his knowledge at the time of the application and of the execution of the contract of the way in which barrels were handled and of their varying capacities as a result thereof."

After the auditor's report was put in evidence at the trial, Killian was asked this question: "But you did know that those wooden packages varied in size as they kept in circulation in the trade here in Boston, the usual customary retail trade? Killian by counsel objected to the above question and to all succeeding questions tending to show or establish the custom contrary to or varying the statute. The questions were admitted by the court for the purpose of showing what the real contract was between the parties. Killian duly excepted."

We pass by the fact that since no motion was made to recommit the auditor's report the ruling and finding made by the auditor stand, and consequently that this finding made by the auditor is a fact in the case.

The written contract between the parties was a contract by which the company was to deliver to Killian beer, ale and porter "at the regular price charged to the Boston retail trade." Under this contract it was competent to prove that as a matter of fact the beer, ale and porter sold to the Boston retail trade was sold at a price per barrel which originally held thirty-one gallons and which held less and less as it continued in use, for the reasons already stated; and that the price of beer, ale and porter charged to the Boston retail trade was based on beer per barrel of that kind and not on beer per barrel containing thirty-one and one

half gallons as specified in R. L. c. 62, § 2. In no other way could it be shown what the contract which the parties made meant, or that it had or had not been performed. The decision in *Miller* v. *Stevens*, 100 Mass. 518, is decisive of the matter. The principle of that decision was recognized in the recent case of *Commonwealth* v. *Gussman*, 215 Mass. 349, 351. It was there said: "The defendant might have sold this barrel by weight or in any other way except as and for a barrel of sweet potatoes, without hindrance. The effect of our statute is that when such goods are sold by the barrel that shall mean a certain weight."

Under the instructions of the presiding judge * the jury in finding for the company must have found that the barrels used by it were those used by the Boston retail trade. That disposes of all the rulings asked for by Killian and refused by the presiding judge.

It was assumed by the auditor and at the argument by counsel for both parties that Killian's written application † was made a part of the contract so far as the question raised here was concerned. It may be doubted whether that is so. The question now decided and the grounds on which the decision is made would not be affected by that fact, if it is a fact.

The entry must be

*Exceptions overruled.*

*John Wentworth;* (*J. P. Magenis* with him,) for Killian.

*F. P. Cabot,* (*R. Dow* with him,) for the Harvard Brewing Company.

---

* *Morton,* J.

† This was an application by Killian to the brewing company for a loan of money upon his opening a new place of business. It contained the statement, "In event of my handling your products, I am to have the lowest price at which your products are sold to the retail trade in the City of Boston. I understand the present retail prices to be as follows:" Here followed a list of beers, ales and porter with the price of each "per barrel."